# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| FRED LEE PLUMP, JR. | ) |

## PLEA AGREEMENT

The Government and the defendant, **FRED LEE PLUMP, JR.**, hereby acknowledge the following plea agreement in this case:

## PLEA

The defendant agrees to (i) plead guilty to **COUNTS ONE** and **TWO** of the Information filed in the above-numbered and -captioned matter; (ii) immediately resign from the Alabama House of Representatives upon entering his guilty plea; (iii) pay restitution of at least $200,000.00 to the Jefferson County Community Service Fund; and (iv) waive certain rights to direct appeal and collateral attack as outlined in section **IV** of this agreement. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorneys, agrees to recommend the disposition specified below, subject to the conditions in section **VII**.

Defendant's Initials ___

## TERMS OF THE AGREEMENT

I. **MAXIMUM PUNISHMENT**

The defendant understands that the maximum statutory punishment that may be imposed for wire fraud conspiracy, in violation of Title 18, United States Code, Section 1349, as charged in Count One, is:

    A.    Imprisonment for not more than 20 years;

    B.    A fine of not more than $250,000.00, or,

    C.    Both A and B;

    D.    Supervised release of not more than 3 years; and

    E.    A special assessment of $100.00.

The defendant understands that the maximum statutory punishment that may be imposed for obstruction of justice, in violation of Title 18, United States Code, Section 1512(c)(2), as charged in Count Two, is:

    A.    Imprisonment for not more than 20 years;

    B.    A fine of not more than $250,000.00, or,

    C.    Both A and B;

    D.    Supervised release of not more than 3 years; and

    E.    A special assessment of $100.00.

## II.     FACTUAL BASIS FOR PLEA

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

Alabama Act No. 2015-226 (the "Act"), passed by the Alabama Legislature in 2015, authorized the Jefferson County Commission to levy and distribute a one percent sales tax and a one percent use tax to benefit the public welfare and enhance the education of the children of Jefferson County. According to the Legislature, these new taxes were necessary because Jefferson County was experiencing financial difficulties as it concluded bankruptcy proceedings and faced the invalidation of its occupational tax.

The Jefferson County Commission adopted resolutions levying the new taxes authorized by the Act beginning August 1, 2017. The Act required the County to distribute the tax revenue according to certain specified priorities, including paying debt incurred during school construction, increasing the County's general fund, giving funds to each board of education serving students in the County, and for certain other purposes set forth in the Act.

The Act created the Jefferson County Community Service Fund (the "Fund"), which was subsidized by approximately $3.6 million annually from the new taxes. The Fund was allocated equally between the Jefferson County House Delegation and the Jefferson County Senate Delegation. Further, the Fund was allocated equally among the members of the Jefferson County House delegation and the Jefferson County Senate delegation.

The Act also created the Jefferson County Community Service Committee (the "Committee"), the four members of which were elected by members of the Jefferson County House and Senate delegations. The Committee was responsible for ensuring that the Fund was used only for the purposes set forth in the Act, which included to support public schools, public roads, public libraries, public museums, public parks, public zoos, neighborhood associations, public athletic facilities, public youth sports associations, public sidewalks, public trails, public greenways, the performing arts, police departments, the sheriff's office, fire departments, and certain nonprofit entities. Each Representative and Senator representing Jefferson County could make recommendations to the Committee of expenditures from their allotted amount of the Fund. These recommendations were made on a form created

by the Committee that required certain certifications by the legislator. These forms were submitted by emails that caused interstate wire communications. Additionally, the organization receiving the funds was required to submit information about the organization and confirm that it intended to use the money for a public purpose.

The Committee began reviewing recommended expenditures and distributing Fund money in September 2018. During each fiscal year from 2018 to 2022, each Representative was allocated approximately $100,000 and each Senator was allocated approximately $240,000 from the Fund.

Legislator #1 was a long-serving member of the Alabama House of Representatives. Beginning in fiscal year 2018, when the Fund was first implemented, Legislator #1 received an allocation of approximately $100,000 per fiscal year from the Fund to distribute for the benefit of Jefferson County.

Defendant **FRED LEE PLUMP, JR.** served as the Executive Director of the Piper Davis Youth Baseball League ("Piper Davis"). Piper Davis is a nonprofit organization that claimed to provide a positive sporting experience for inner-city youth in Jefferson County.

Individual #1 was Legislator #1's assistant and defendant **FRED LEE PLUMP, JR.'s** mistress.

Beginning in fiscal year 2018, and continuing through fiscal year 2022, Legislator #1 was allocated approximately $500,000 by the Fund. Legislator #1 directed approximately $400,000 of those discretionary funds to Piper Davis. In turn, defendant **FRED LEE PLUMP, JR.** gave approximately $200,000 to Individual #1.

## The Conspiracy

From in or about March 2019, and continuing to in or about April 2023, the exact dates being unknown, within Jefferson County, in the Northern District of Alabama, and elsewhere, defendant **FRED LEE PLUMP, JR.** did knowingly combine, conspire, and agree with others known and unknown to devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit or cause to be transmitted by wire communication any writing, sign,

picture, signal or sound in interstate commerce for the purpose of executing the scheme or artifice, in violation of Title 18, United States Code, Section 1343.

## Manner and Means

It was a part of the conspiracy that Legislator #1 would and did recommend during each fiscal year that most of his allotment of Fund money be paid to Piper Davis. Each recommendation was made on a form that required Legislator #1 to certify that he had not asked for anything of value for making the recommendation and that Piper Davis's use of the funds would qualify under the purposes listed in the Act. These forms were submitted by email and caused interstate wire transmissions.

In or about March 2019, Legislator #1 called **PLUMP** and offered to provide a donation to Piper Davis. **PLUMP** was surprised by the offer because Legislator #1 had for years ignored repeated requests by **PLUMP** for donations. Legislator #1 explained that he would allocate money from the Fund to Piper Davis.

Soon thereafter, during a meeting at Legislator #1's office in Jefferson County with Legislator #1 and Individual #1, **PLUMP** helped complete the recommendation form that Legislator #1 would submit to the Committee. After the form was submitted, **PLUMP** was contacted by the Fund Administrator by email to provide information about Piper Davis. **PLUMP** provided the requested information by email. These emails cause interstate wire transmissions.

A few weeks later, **PLUMP** returned to Legislator #1's office to again meet with Legislator #1 and Individual #1. They told **PLUMP** that Piper Davis was approved to receive Fund money. Individual #1 told **PLUMP** that she needed money to fund a dance team but the Committee would not approve the request. When the Committee issued the check to Piper Davis, Individual #1 delivered the check to **PLUMP** and **PLUMP** wrote a check to Individual #1. Individual #1 told **PLUMP** that they needed half, meaning **PLUMP** was to give half of the Fund money to Legislator #1 and Individual #1.

**PLUMP** agreed to pay kickbacks from Fund money directed to Piper Davis by Legislator #1. **PLUMP** understood that if he did not give half of the money to them, Legislator #1 would not direct Fund money to Piper Davis. **PLUMP** knew Individual #1 did not need money for a dance team. Individual #1 did not provide

dancers or cheerleaders for Piper Davis events. **PLUMP** began a romantic relationship with Individual #1 soon after giving her the first check.

From the beginning of the conspiracy through fiscal year 2022, Legislator #1 directed Fund money to Piper Davis on 10 occasions for a total of approximately $400,000.00. **PLUMP**, in turn, wrote 10 checks to Individual #1 totaling approximately $200,000.00. **PLUMP** falsely wrote on some checks that the money was for "dance team" or cheerleading to conceal the payments were kickbacks. Individual #1 delivered the Fund checks to **PLUMP** and picked up the checks **PLUMP** wrote to her. This chart shows these payments:

| Fund checks to Piper Davis | | Piper Davis checks to Individual #1 | |
|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT |
| 03/20/2019 | $21,000.00 | 04/08/2019 | $10,000.00 |
| 06/21/2019 | $21,002.22 | 06/24/2019 | $15,000.00 |
| 11/15/2109 | $80,000.00 | 11/25/2019 | $40,000.00 |
| 05/14/2020 | $13,300.91 | 06/03/2020 | $6,650.45 |
| 05/28/2020 | $5,000.00 | | |
| 11/05/2020 | $65,000.00 | 11/11/2020 | $3,250.00 |
| | | 11/12/2020 | $29,250.00 |
| 02/09/2021 | $28,518.00 | 02/24/2021 | $14,000.00 |
| 01/13/2022 | $50,000.00 | 02/03/2022 | $25,000.00 |
| 06/07/2022 | $26,955.45 | 07/05/2022 | $13,000.00 |
| 12/07/2022 | $80,000.00 | 12/20/2022 | $40,000.00 |

The Committee requested information from **PLUMP** by email each time Legislator #1 submitted a recommendation form. **PLUMP** submitted false and fraudulent information to the Committee, sometimes by email, about Piper Davis's intended use of Fund money. Specifically, **PLUMP** concealed from the Committee that he was paying kickbacks and, instead, submitted budgets falsely stating that he was using the entire amount received from the Fund to help inner-city kids through baseball. On several occasions, **PLUMP** also signed a document falsely certifying that all funds would be used for permitted purposes. These emails caused interstate wire transmissions.

Defendant's Initials

## Obstruction of Justice

On March 4, 2023, the day after he was first interviewed by FBI and IRS agents about the kickback scheme and served with a grand jury subpoena, **PLUMP** corruptly attempted to obstruct, influence, and impede the grand jury investigation. Specifically, **PLUMP** sent Individual #1 a text stating "Red Alert" and naming a place for a meeting. Later, when meeting with Individual #1, **PLUMP** warned Individual #1 about the investigation and told her to "get your shit in order" and that she needed to find a dance team if she did not have one. These acts were committed in the Northern District of Alabama and were done with the intent to obstruct, influence, and impede the grand jury investigation.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

**FRED LEE PLUMP, JR.**

### III.    RECOMMENDED SENTENCE

Subject to the limitations in section **VII** regarding subsequent conduct and pursuant to Fed. R. Crim. P. 11(c)(1)(B), the Government will recommend the following disposition:

**A.**   That the defendant be awarded a two (2) level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct. The Government agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the defendant's prompt notification

to the Government of the intention to enter a plea of guilty. The Government may oppose any adjustment for acceptance of responsibility if the defendant: (1) fails to admit each and every item in the factual stipulation; (2) denies involvement in the offense; (3) gives conflicting statements about the defendant's involvement in the offense; (4) is untruthful with the Court, the Government, or the United States Probation Officer; (5) obstructs or attempts to obstruct justice prior to sentencing; (6) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (7) attempts to withdraw the defendant's plea of guilty for any reason other than those expressly enumerated in the "Waiver of Right to Appeal and Post-Conviction Relief" section of this Plea Agreement;

**B.** That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent with the low end of the advisory United States Sentencing Guideline range as calculated by the Court at the time of sentencing;

**C.** That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the Court, subject to the Court's standard conditions of supervised release;

**D.** That the defendant be required to pay restitution of at least $200,000.00 to the Jefferson County Community Service Fund jointly and severally with any coconspirators who are also convicted;

**E.** That the defendant be required to pay a fine in accordance with the sentencing guidelines should the Court determine that the defendant has the ability to pay a fine, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release; and

**F.** That the defendant pay a special assessment of $200.00, said amount due and owing as of the date sentence is pronounced.

## IV. WAIVERS

### A. STATUTE OF LIMITATIONS WAIVER

In consideration of the recommended disposition of this case, I, FRED LEE PLUMP, JR., hereby understand, acknowledge, and agree that if this plea agreement is set aside for any reason, I will not assert any defense based on any applicable statute of limitations or the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, that includes the passage of time from and including the date of this plea agreement until and including the date of entry of any order setting this plea agreement aside.

### B. RIGHT TO APPEAL AND POST-CONVICTION RELIEF

In consideration of the recommended disposition of this case, I, FRED LEE PLUMP, JR., hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the statute(s) to which I am pleading guilty is

or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute(s).

The defendant reserves the right to contest in an appeal or post-conviction proceeding(s) the following:

1. Any sentence imposed in excess of the applicable statutory maximum sentence(s);

2. Any sentence imposed in excess of the Guidelines range determined by the Court at the time sentence is imposed; and

3. Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the United States Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the Government retains its right to appeal where authorized by statute.

I, FRED LEE PLUMP, JR., hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

_____
FRED LEE PLUMP, JR.

V.   **UNITED STATES SENTENCING GUIDELINES**

The defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in *United States v. Booker*, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the Court's discretion and is not required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

VI.   **AGREEMENT NOT BINDING ON COURT**

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the Government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the Government's recommendation. Further, the defendant understands that if the Court does not accept the Government's recommendation, the defendant does not have the right to withdraw the guilty plea.

VII.   **VOIDING OF AGREEMENT**

The defendant understands that if the defendant (a) violates any federal, state, or local law or any condition of pretrial release after entering into this plea agreement, (b) moves the Court to accept a plea of guilty in accordance with, or pursuant to, the provisions of *North Carolina v. Alford*, 400 U.S. 25 (1970),

(c) tenders a plea of *nolo contendere* to the charges, (d) violates any other term of this plea agreement, and/or (e) does or says anything that is inconsistent with the acceptance of responsibility, the plea agreement will become **NULL** and **VOID** at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein. Further, such election will not entitle the defendant to withdraw a previously entered plea.

### VIII.    OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

### IX.    COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to:

- fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party;
- promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs;
- identify all assets over which the defendant exercises or exercised control,

- directly or indirectly, within the past five years, or in which the defendant has or had during that time any financial interest;

- take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant;

- undergo any polygraph examination the Government may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years.

The defendant further agrees that the above information, as well as any of the defendant's financial statements and disclosures, will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

### X.   AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct.

This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors, which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any and waives objection to the inclusion of that restitution in any order issued by the Court.

## XI. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to the defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

## XII. IMMIGRATION STATUS

The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. The defendant's guilty plea and conviction make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States if the defendant is

not a citizen of the United States. Removal and other immigration consequences are the subject of a separate proceeding, however; and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Understanding all of this, the defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

## XIII.   DEFENDANT'S ACKNOWLEDGEMENT

I have read and understand the provisions of this plea agreement consisting of 17 pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence on my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

> **NO PROMISES OR REPRESENTATIONS OTHER THAN THOSE IN THE AGREEMENT HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

_____

I understand that this plea agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this plea agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this plea agreement, both individually and as a total binding agreement.

05/18/23
DATE

**FRED LEE PLUMP, JR.**
Defendant

## XIV.   COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me that my client understands this plea agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case

and are in accord with my best judgment. I concur in the entry of the plea agreement on the terms and conditions set forth herein.

5/18/23
DATE

RICHARD S. JAFFE
MICHAEL P. HANLE
MICHAEL W. WHISONANT, JR.
Defendant's Counsel

## XV. GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this plea agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

PRIM F. ESCALONA
United States Attorney

5/22/23
DATE

GEORGE A. MARTIN, JR.
Assistant United States Attorney

5/22/2023
DATE

CATHERINE L. CROSBY
Assistant United States Attorney